# In the
# United States Court of Appeals
# for the Second Circuit

August Term 2024
Argued: October 7, 2024
Decided: December 23, 2024

No. 24-935

UNITED STATES OF AMERICA,
*Appellee*,

v.

JOHN BRADLEY,
*Defendant-Appellant*.[*]

Appeal from the United States District Court for the Southern District of New York

Before: NEWMAN, CABRANES, AND PÉREZ, *Circuit Judges*.

On appeal from a judgment of the United States District Court for the Southern District of New York (Sullivan, *J*.).

Defendant-Appellant John Bradley appeals a judgment revoking his supervised release and sentencing him to 18 months in prison, followed by 18 more months of supervised release. Bradley challenges the 2023 and 2024 orders ("Designation Orders") that Chief Judge Livingston issued authorizing Judge Sullivan, who presided over Bradley's initial criminal conviction as a district court judge, to sit by designation and conduct the revocation proceedings after his elevation to this Court of Appeals. We conclude that the statute authorizing Chief

---

[*] The Clerk of Court is respectfully directed to amend the official caption as set forth above.

Judge Livingston to make such a designation, 28 U.S.C. § 291(b), is constitutional as applied to Judge Sullivan's designation and that the Designation Orders conform to the dictates of § 291(b).  We also hold that Bradley was not entitled to factfinding by a jury during his revocation proceedings.  We therefore affirm the judgment of the district court.

AFFIRMED.

        NATHAN REHN (Meredith C. Foster, *on the brief*), Assistant United States Attorneys, *for* Damian Williams, United States Attorney for the Southern District of New York, New York, NY.

        SARAH BAUMGARTEL, Federal Defenders of New York, Inc., New York, NY.

MYRNA PÉREZ, *Circuit Judge*:

In this criminal appeal, Defendant-Appellant John Bradley challenges the constitutional validity of two judicial practices:  a circuit judge temporarily sitting in a district court by designation and a district court conducting supervised-release revocation proceedings without a jury when those proceedings do not resemble punishment for a new offense.  Each enjoys a long history in this country.  Neither is constitutionally infirm.  Bradley also contends that Chief Judge Livingston's 2023 and 2024 orders designating Judge Sullivan to sit as a district judge in the Southern District of New York ("Designation Orders" or "Orders")

do not meet the requirements of the statute authorizing such designations, 28 U.S.C. § 291(b). We conclude that Chief Judge Livingston issued those Orders in conformance with § 291(b). We therefore affirm in full the judgment of the district court revoking Bradley's supervised release.

## BACKGROUND

In December 2013, Bradley pleaded guilty to one count of possessing a firearm in violation of 18 U.S.C. § 922(g)(1), which circumscribes firearm access for individuals who have been convicted of certain crimes. A previous felony conviction for selling crack cocaine placed Bradley within the ambit of § 922(g)(1)'s prohibition. Judge Sullivan, then a district judge on the United States District Court for the Southern District of New York, presided over the criminal proceedings. Following Bradley's plea, Judge Sullivan sentenced Bradley to three years in prison, followed by three years of supervised release. Five years later, the Senate confirmed Judge Sullivan's appointment to the Second Circuit Court of Appeals.

Many members of this Court have sat by designation in cases over which they presided as district court judges.[1] Chief Judge Livingston issued the two

---

[1] *See, e.g.*, *United States v. Snype*, No. 02 Cr. 939 (DC), 2023 WL 4622870 (S.D.N.Y. July 19, 2023) (Chin, J.); *Wilson v. United States*, No. 16 Civ. 4994 (AJN), 2023 WL 4131685 (S.D.N.Y. June 22, 2023) (Nathan, J.); *United*

3

Orders relevant here. She designated Judge Sullivan to sit in the Southern District of New York "from January 1, 2023 through December 31, 2023 and for such additional time as may be required to complete unfinished business," and used identical language to designate him again in calendar year 2024. Appellant's App'x 25, 196–97.

In November 2023, the Probation Office submitted the first of two reports alleging Bradley had violated the terms of his supervised release. The Probation Office alleged that Bradley had tested positive for marijuana, assaulted and strangled a former romantic partner in violation of New York state law, and left the judicial district without permission—for a total of six alleged violations. Pursuant to the Orders, Judge Sullivan presided over Bradley's revocation proceedings.

During the pendency of the revocation proceedings, Bradley filed motions requesting (1) Judge Sullivan's recusal on the grounds that his designation to the

---

*States v. Kalichenko*, No. 14 Cr. 95 (JFB), 2023 WL 3688109 (E.D.N.Y. May 25, 2023) (Bianco, J.); *United States v. David*, No. 90 Cr. 424 (RR), 2004 WL 7323439 (E.D.N.Y. Dec. 30, 2004) (Raggi, J.); *Samson v. N.Y. State Dep't of Transp.*, No. 96 Civ. 1871 (RSP), 2000 WL 307380 (N.D.N.Y. Mar. 23, 2000) (Pooler, J.); *Morales v. United States*, No. 95 Civ. 2413 (JAC), 1996 WL 942428 (D. Conn. Aug. 9, 1996) (Cabranes, J.); *United States v. Roland*, No. 89 Cr. 341 (PNL), 1995 WL 450493 (S.D.N.Y. July 31, 1995) (Leval, J.); *Alvarez-Perez v. United States*, No. 88 Cr. 408 (JMM), 1991 WL 148514 (E.D.N.Y. July 12, 1991) (McLaughlin, J.); *United States v. Helmsley*, 760 F. Supp. 338 (S.D.N.Y. 1991) (Walker, J.); *Cont'l Connector Corp. v. Cont'l Specialties Corp.*, 492 F. Supp. 1088 (D. Conn. 1979) (Newman, J.).

district court violated the Appointments Clause, U.S. Const. art. II, § 2, cl. 2, and the statute authorizing designation orders, 28 U.S.C. § 291(b); and (2) a jury trial on Bradley's alleged supervised-release violations.  The district court denied the motions orally and at greater length in a written order.

Thereafter, it conducted an evidentiary hearing on the allegations.  During the hearing, the court determined, by a preponderance of evidence, that Bradley had used marijuana and left the judicial district without permission.  It referenced "two positive drugs tests, an admission to the probation officer, and . . . national lab results" in support of the marijuana violations and "video" evidence of Bradley in a different judicial district.  Appellant's App'x 188–89.  After further review of the remaining allegations, and based on the testimony of the victim, the court also concluded that Bradley had committed assault and strangulation in violation of New York law.  Accordingly, on April 3, 2024, it sentenced him to 18 months in prison and 18 months of supervised release for the six violations. Bradley timely appealed.

## DISCUSSION

Appellant contends that Chief Judge Livingston's designation of Judge Sullivan to the district court was unlawful and that he was entitled to a jury trial

5

before the revocation of his supervised release. We review de novo questions involving interpretation of the Constitution and federal statutes. *United States v. Donziger*, 38 F.4th 290, 295 (2d Cir. 2022), *cert. denied*, 143 S. Ct. 868 (2023); *United States v. Epskamp*, 832 F.3d 154, 160 (2d Cir. 2016).

## I. The Designation Orders Are Constitutional

We begin by clarifying the relevant Designation Orders. While Bradley points us to similar orders for periods other than 2023 and 2024, he appeals only the judgment revoking his supervised release following proceedings initiated in November 2023 and concluded in April 2024. And Bradley's counsel explained at oral argument that he challenges the designation statute, § 291(b), only as applied to the Orders relevant to his case. *See* Oral Arg. Audio Recording at 00:52–01:51, 18:25–19:00, 20:13–20:19. We therefore focus exclusively on the 2023 and 2024 Orders. *See* Appellant's App'x 25, 196–97.

Section 291(b) empowers "[t]he chief judge of a circuit" to "in the public interest, designate and assign temporarily any circuit judge within the circuit . . . to hold a district court in any district within the circuit." 28 U.S.C. § 291(b). Because acts of Congress are "presumed constitutional," Bradley bears the burden of demonstrating that as applied to him, § 291(b) contravenes the Appointments

Clause.  *See Lujan v. G&G Fire Sprinklers, Inc.*, 532 U.S. 189, 198 (2001).  We conclude that he falls short of his burden.

The animating concern of the Appointments Clause is that the President appoint "principal federal officers," including judges, with the advice and consent of the Senate.  *See Freytag v. Comm'r*, 501 U.S. 868, 884 (1991).  Principal officers not provided for in the Constitution, such as district and circuit court judges, "shall be established by Law."  U.S. Const. art. II, § 2, cl. 2.  Thus, Congress plays a necessary role in providing for circuit and district court judgeships through the exercise of its legislative power.  *See also id*. art. I, § 8, cl. 9 (authorizing Congress "[t]o constitute Tribunals inferior to the [S]upreme Court"); *id*. art. III, § 1 (providing that the judicial power shall be vested "in such inferior Courts as the Congress may from time to time ordain and establish").

Exercising this legislative power, Congress has authorized judges to sit by designation for over two centuries—since at least 1814.  *See* Marin K. Levy, *Visiting Judges*, 107 Cal. L. Rev. 67, 77–78 (2019).  In our modern era, the Supreme Court has upheld a number of similarly worded designation statutes against constitutional challenges.  For example, the Supreme Court labeled a challenge to a statute authorizing district court judges to sit in another district "absolute[ly]

7

unsound[]." *Lamar v. United States*, 241 U.S. 103, 117–18 (1916); *see Glidden Co. v Zdanok*, 370 U.S. 530, 539–41 (1962) (upholding a designation statute authorizing the Chief Justice to assign judges from the Court of Claims and the Court of Customs and Patent Appeals to sit on district courts and courts of appeals). Our sister circuits have followed suit. *See, e.g.*, *United States v. Cavanaugh*, 807 F.2d 787, 792 (9th Cir. 1987) (holding constitutional a statute permitting Article III judges to sit on the Foreign Intelligence Surveillance Court); *In re Certain Complaints Under Investigation by an Investigation Committee*, 783 F.2d 1488, 1515 (11th Cir. 1986) (holding lawful a statute permitting the chief judge of a circuit to appoint judges to a judicial misconduct committee). We note that designation statutes abound in some form for every level of the federal judiciary. *See* 28 U.S.C. §§ 291–294, 297. We know of no circuit that has held that the relevant statutory provision in this case, § 291(b), is unconstitutional. *See N.L.R.B. v. Noel Canning*, 573 U.S. 513, 524 (2014) ("[L]ong settled and established practice is a consideration of great weight in a proper interpretation of constitutional provisions regulating the relationship between Congress and the President." (quoting *The Pocket Veto Case*, 279 U.S. 655, 689 (1929))).

Bradley's as-applied challenge falters because he fails to distinguish the designation of Judge Sullivan from the long-standing congressionally authorized practice of sitting by designation in federal courts. First, as noted above, judges from this Court have commonly sat by designation, many of them in order to continue working on cases over which they presided originally as district court judges. *See supra* note 1. Chief Judge Livingston's designation of Judge Sullivan, who presided over Bradley's initial criminal conviction as a duly appointed district court judge, fits squarely within this tradition.

Second, the relevant Designation Orders are each limited by date and the completion of "unfinished business." *See* Appellant's App'x 25, 196–97. They permit Judge Sullivan to assume the district judge's role only temporarily. The facts before us do not support Bradley's claim that Judge Sullivan sits in "perpetual" appointment on the district court. *See* Appellant's Br. 19; *cf.* Oral Arg. Audio Recording at 12:20—13:20, 18:45—19:40 (grappling with a hypothetical involving a 40-year designation of a federal circuit judge to another court). Consequently, we need not reach the outer bounds of permissible judicial designation under the Appointments Clause to conclude that the Designation Orders here withstand constitutional scrutiny.

In sum, the temporary Designation Orders here accord with our constitutional practice and survive Bradley's Appointments Clause challenge.

## II. The Designation Orders Conform to § 291(b)

Section 291(b) provides that the chief judge of the circuit "may, in the public interest, designate and assign temporarily any circuit judge within the circuit . . . to hold a district court in any district within the circuit." 28 U.S.C. § 291(b). Appellant challenges whether the Designation Orders were "temporar[y]" within the meaning of the designation statute and whether Chief Judge Livingston was required to make a finding that their issuance would be "in the public interest." We find that the Orders here conform to the dictates of § 291(b).

The Designation Orders properly provide for "temporar[y]" appointment. *Id*. A "temporary" order "last[s] for a limited time only, as distinguished from that which is perpetual, or indefinite, in its duration." *See Temporary*, Black's Law Dictionary (3d ed. 1933).[2] Because the Orders set expiration upon a specific date (December 31) or event (the completion of "unfinished business"), they are not "perpetual." *See* Appellant's App'x 25, 196–97. Even if reference to the termination of "unfinished business" is not especially specific, we are nevertheless

---

[2] We refer to the version of Black's Law Dictionary that was in circulation when Congress enacted § 291(b).

satisfied that the phrase cannot reasonably be understood as a permanent authorization. And in any event, the Orders specify in the alternative that they would expire on December 31, 2023, and on December 31, 2024, respectively. Bradley's revocation proceedings fell within the two bounded, one-year periods delineated in the Orders.

"[N]earby statutory provisions" confirm the meaning of "temporar[y]" in § 291(b). *See Unicolors, Inc. v. H&M Hennes & Mauritz, L. P.*, 595 U.S. 178, 185 (2022); *see also* Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* 167–69 (2012) (approving "consider[ing] the entire text, in view of its structure and of the physical and logical relation of its many parts"). Section 44(b) in the same Title describes the permanent appointment of circuit judges, who "shall hold office *during good behavior*." 28 U.S.C. § 44(b) (emphasis added) (mirroring the language of U.S. Const. art. III, § 1). It is most natural to read § 291(b) in contrast to the permanent nature of judicial appointments described in § 44(b). Because the Designation Orders here identify a discrete endpoint and do not authorize Judge Sullivan to sit in the Southern District of New York perpetually or indefinitely, they do not violate the statute.

11

Furthermore, Chief Judge Livingston's decision to designate Judge Sullivan is not "open to . . . attack" on the grounds that she failed to make an initial finding of public interest, because "the decision as to requiring public interest is left to the one having the power to assign." *See Johnson v. Manhattan Ry. Co.*, 289 U.S. 479, 501 (1933) (discussing § 291(b)'s predecessor statute). The Chief Judge is empowered to designate this Circuit's judges at her discretion.[3] To hold otherwise would inject "intolerable uncertainty" into the cases heard before a designated judge because a litigant could challenge a proceeding that is otherwise procedurally sound on the grounds that the judge's designation order contains an insufficient finding of public interest. *Id*.

## III. The Revocation Proceeding Did Not Require a Jury Trial

We next consider whether the Constitution entitles defendants to a jury trial before a court revokes supervised release pursuant to 18 U.S.C. § 3583(e)(3) and (g). A defendant may be entitled to a jury trial when aspects of the relevant statute governing the supervised-release proceedings "in combination" render the

---

[3] This reading accords with the text of the statute. Congress has explicitly mandated a judicial "finding" in the criminal-procedure context when it has meant to require courts to perform one. *Compare* 28 U.S.C. § 291(b) (providing only that the designation order be "in the public interest"), *with* 18 U.S.C. § 3161(h)(7)(A) (providing that a continuance pursuant to the Speedy Trial Act is proper only upon "findings that the ends of justice [are] served"), *and* 18 U.S.C. § 5032 (permitting, upon the appropriate "find[ing]" that doing so is "in the interest of justice," the trial of a juvenile as an adult).

12

proceedings more akin to "punishment for a new offense" than "ordinary revocation." *United States v. Haymond*, 588 U.S. 634, 659 (2019) (Breyer, J., concurring).[4]  We do not find the requisite resemblance in Bradley's case.

## A. Revocation Proceedings Pursuant to 18 U.S.C. § 3583(e)(3) Survive *Haymond*

For four of Bradley's six violations, the district court presided over revocation proceedings pursuant to § 3583(e)(3) of Title 18.  Subsection (e)(3) authorizes a court to revoke supervised release if the court finds the defendant violated the conditions of his supervised release.  This Circuit has repeatedly held that "the right to a jury trial . . . do[es] not attach to supervised release hearing in the same way that [it] do[es] to criminal prosecutions." *United States v. Peguero*, 34 F.4th 143, 157 (2d Cir. 2022); *accord United States v. Diaz*, 986 F.3d 202, 208–09 (2d Cir. 2021); *United States v. Doka*, 955 F.3d 290, 293–94 (2d Cir. 2020).  Rather, revocation requires "only a finding 'by a judge under a preponderance of the

---

[4] In *Haymond*, a majority of Justices agreed to the judgment, "but no single rationale explaining the result" was shared amongst five Justices. *United States v. Doka*, 955 F.3d 290, 296 (2d Cir. 2020) (quoting *Marks v. United States*, 430 U.S. 188, 193 (1977)).  So, because "Justice Breyer's opinion concurring in the judgment represents the narrowest ground supporting the judgment," it supplies "the controlling rule." *Id.*  And as Justice Breyer has explained, "consistent with traditional parole," "[t]he consequences that flow from violation of the conditions of supervised release are first and foremost considered sanctions for the defendant's breach of trust—his failure to follow the court-imposed conditions that followed his initial conviction." *Haymond*, 588 U.S. at 658 (Breyer, J., concurring) (internal quotation marks and citation omitted).

evidence standard.'" *United States v. McNeil*, 415 F.3d 273, 277 (2d Cir. 2005) (quoting *Johnson v. United States*, 529 U.S. 694, 700 (2000)); *accord* 18 U.S.C. § 3583(e)(3).

Bradley invites us to reconsider this approach in light of the Supreme Court's decision in *Haymond*, 588 U.S. 634, but this Court has already undertaken that exercise. *Haymond* held unconstitutional subsection (k) of § 3583, which provides that if a judge finds by a preponderance of evidence that a defendant on supervised release committed one of the enumerated offenses set forth in the subsection, the judge "*must* impose an additional prison term of at least five years and up to life without regard to the length of the prison term authorized for the defendants' initial crime of conviction." 588 U.S. at 639 (emphasis in original).

In *United States v. Doka*, we determined that revocation of supervised release pursuant to § 3583(e)(3) remains constitutional following *Haymond*. 955 F.3d at 296–98. We concluded that none of the three features that the *Haymond* concurrence determined rendered subsection (k) suspect apply to subsection (e)(3). *Id*. Specifically, we stated that "Section 3583(e)(3) does not (1) apply to a discrete set of [federal criminal] offenses; (2) eliminate the trial judge's discretion in a revocation proceeding; and (3) impose a mandatory minimum term of

14

imprisonment for the violation of a condition of supervised release." *Id*. at 296. We believe *Doka*'s reasoning remains sound. In accordance with that decision, Judge Sullivan properly presided over the fact-finding during the revocation hearing.

### B. Revocation Proceedings Pursuant to 18 U.S.C. § 3583(g) Survive *Haymond*

For two of the supervised release violations, both of which relate to Bradley's marijuana usage, the district court relied on § 3583(g). Subsection (g) provides for "[m]andatory [r]evocation" for, as relevant here, "possess[ion] [of] a controlled substance." 18 U.S.C. § 3583(g)(1); *see* Appellant's App'x 239–40. Subsection (g) incorporates by reference the maximum lengths of imprisonment set forth in subsection (e)(3), whose imposition without a jury trial was the subject of this Court's *Doka* decision, as described above.

We now join our sister circuits in explicitly holding that subsection (g) also survives *Haymond*. *See, e.g.*, *United States v. Seighman*, 966 F.3d 237, 243–44 (3d Cir. 2020); *United States v. Coston*, 964 F.3d 289, 296 (4th Cir. 2020); *United States v. Garner*, 969 F.3d 550, 551, 553 (5th Cir. 2020); *United States v. Robinson*, 63 F.4th 530, 532, 540 (6th Cir. 2023); *United States v. Wilson,* 939 F.3d 929, 932-33 (8th Cir. 2019);

15

*United States v. Richards*, 52 F.4th 879, 884 (9th Cir. 2022).[5] All three factors that "in combination" convinced the *Haymond* Court, as expressed in Justice Breyer's concurrence, that subsection (k) is unconstitutional are absent here. *See* 588 U.S. at 659 (Breyer, J., concurring).

First, subsection (g) does not "appl[y] *only* when a defendant commits a discrete set of federal criminal offenses," *id*. (Breyer, J., concurring) (emphasis added), because it also covers conduct that is otherwise legal—namely, refusing to comply with a drug test or repeatedly testing positive for controlled substances. *See* 18 U.S.C. § 3583(g)(3)–(4).[6]

Second, the presiding judge retains "discretion to decide whether violation of a condition of supervised release should result in imprisonment and for how long." *Haymond*, 588 U.S. at 659 (Breyer, J., concurring). Unlike subsection (k), subsection (g) does not mandate a statutory minimum. Rather, the judge may impose a sentence of any length upon revocation, subject only to statutory maxima

---

[5] Two additional circuits have approved of § 3583(g) post-*Haymond* in unpublished decisions. *See United States v. Ewing*, 829 F. App'x 325, 330 (10th Cir. 2020); *United States v. Walton*, 819 F. App'x 731, 734 (11th Cir. 2020).

[6] Even if we were to consider in isolation subsection (g)(1), which mandates revocation for conduct that also constitutes a federal crime—that is, possession of a controlled substance—we would still find the revocation proceedings constitutional. The other two factors that were "in combination" central to the Justice Breyer's reasoning are absent here. *See Haymond*, 588 U.S. at 659 (Breyer, J., concurring). And in any event, Justice Breyer did not take each of the listed offenses in subsection (k) in turn, but evaluated subsection (k) as a whole, *see id*. (Breyer, J., concurring), as we do with subsection (g).

that depend on the class of the underlying offense (here, Bradley's underlying firearm conviction). *See* 18 U.S.C. § 3583(g) (mandating that the court "require the defendant to serve a term of imprisonment" without specifying any length except the maxima contained within 18 U.S.C. § 3583(e)(3)). Judge Sullivan could have satisfied subsection (g) by, for example, sentencing Bradley only to time served. So, even though subsection (g) describes "[m]andatory" revocation, it does not command a comparable "punishment" to flow from that revocation as if for a "new criminal offense[]," as subsection (k) did. *Haymond*, 588 U.S. at 659 (Breyer, J., concurring); *cf. id*. (Breyer, J., concurring) ("Revocation of supervised release is typically understood as part of the penalty for the *initial* offense." (emphasis added) (internal quotation marks and citation omitted)).

Third, and relatedly, subsection (g) does not require imposition of a lengthy mandatory minimum. Subsection (k) provided that the judge must set a sentence of "not less than 5 years" upon finding that the defendant had committed certain enumerated crimes. *See* 18 U.S.C. § 3583(k). Subsection (g) does not limit the judge's discretion in this manner. *Cf. Haymond*, 588 U.S. at 659 (Breyer, J., concurring) (discussing the length of the mandatory minimum under subsection (k) as a factor rendering it unconstitutional).

17

In sum, "the consequences for violation of conditions of supervised release" under subsection (g) "are limited by the severity of the original crime of conviction," which determines the statutory maxima to which the defendant can be subject upon revocation in accordance with subsection (g). *Id.* at 658 (Breyer, J., concurring). "[T]he conduct that results in revocation" does not compel a lengthy prison sentence—or, indeed, an additional prison sentence of any length— pursuant to a mandatory minimum. *Id.* (Breyer, J., concurring). Subsection (g) is constitutional.

## CONCLUSION

Having canvassed binding and persuasive case law, we are satisfied that the statutes (1) authorizing Chief Judge Livingston to temporarily designate Judge Sullivan, 28 U.S.C. § 291(b); and (2) authorizing Judge Sullivan to conduct revocation proceedings without a jury trial, 18 U.S.C. § 3583(e)(3), (g)(1), both pass constitutional muster. We further hold that the Designation Orders at issue in this case conform to § 291(b)'s dictates. For these reasons, the judgment of the district court revoking Bradley's supervised release is **AFFIRMED**.